UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---:|
| **Chambers of**<br>**Douglas R. Miller**<br>United States Magistrate Judge | 101 West Lombard Street<br>Baltimore, Maryland 21201<br>MDD_DRMChambers@mdd.uscourts.gov<br>(410) 962-7770 |

July 29, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Uk C. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 24-2286-DRM

Dear Counsel:

On August 7, 2024, Plaintiff Uk C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF No. 9) and the parties' briefs (ECF Nos. 12, 14, 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on August 20, 2019, and a Title XVI application for Supplemental Security Income ("SSI") benefits on September 6, 2019, alleging a disability onset of August 1, 2018. Tr. 212-24. Plaintiff's claims were denied initially and on reconsideration. Tr. 122-27, 135-38. On March 2, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 34-73. Following the hearing, on May 12, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 9-28. The Appeals Council denied Plaintiff's request for review, Tr. 1-3, and Plaintiff then appealed to this Court on December 1, 2021, Tr. 1455-56. This Court remanded Plaintiff's case on November 1, 2022, to the Commissioner for further consideration pursuant to 42 U.S.C. § 405(g). Tr. 1457-69. The Appeals Council remanded Plaintiff's case on March 3, 2023. Tr. 1471-75. On May 14, 2024, the ALJ held another hearing. Tr. 1400-23. On June 7, 2024, the ALJ again determined that Plaintiff was not disabled. Tr. 1372-

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on August 7, 2024. ECF No. 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Uk C. v. Bisignano*
Civil No. 24-2286-DRM
July 29, 2025
Page 2

91. The second ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since August 1, 2018, the alleged onset date." Tr. 1378. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "ischemic heart disease, chronic systolic heart failure, obesity, bilateral carpal tunnel syndrome, diabetes mellitus with neuropathy, obstructive sleep apnea (OSA), chronic pain syndrome, and degenerative disc disease of the cervical and lumbar spine." Tr. 1378. The ALJ also determined that Plaintiff suffered from the non-severe impairments of GERD, hernia, pancreatitis, neurocognitive disorder, and anxiety disorder. Tr. 1378. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 1380. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift, carry, push and pull twenty pounds occasionally and ten pounds frequently. He can sit for six hours in an eight-hour workday and can stand and walk for a total of six hours in an eight-hour workday. The claimant can frequently reach, handle, finger and feel bilaterally. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He can never climb ladders, ropes or scaffolds. The claimant can have occasional exposure to pulmonary irritants, poor ventilation, concentrated odors, fumes, dusts, and gases, extreme cold and extreme heat, and humidity.

Tr. 1381-82. The ALJ determined that Plaintiff was able to perform past relevant work as a scanner operator (DOT[3] #972.282-010) and, alternatively, could perform other jobs that existed in

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of*

significant numbers in the national economy. Tr. 1389-91. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 1391.

### III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

Plaintiff raises five arguments on appeal, specifically that the ALJ (1) failed to comply with the Court's remand order, by failing to comply with Social Security Ruling ("SSR") 19-2p when evaluating Plaintiff's obesity; (2) failed to connect Plaintiff's fatigue-related inattentiveness and his ability to maintain competitive employment; (3) failed to conduct a function-by-function assessment of Plaintiff's ability to perform light work; (4) failed to properly evaluate Plaintiff's mental impairments when the ALJ concluded that Plaintiff's anxiety and neurocognitive disorders were non-severe at step two; and (5) improperly evaluated Plaintiff's subjective symptoms. ECF No. 12 at 8-21; ECF No. 15 at 1-4. Defendant counters that substantial evidence supports the ALJ's step two findings; that the ALJ relied upon substantial evidence and applied the proper framework in assessing Plaintiff's light work RFC; that the ALJ appropriately evaluated Plaintiff's subjective symptoms; and that the ALJ properly addressed the remand order in considering Plaintiff's obesity and fatigue. ECF No. 14 at 7-27.

Because it finds the argument dispositive, the Court begins with Plaintiff's contention that the ALJ failed to comply with the Court's remand order in evaluating Plaintiff's obesity and fatigue. ECF No. 12 at 10-13. SSR 19-2p explains that "[o]besity is a complex disorder characterized by an excessive amount of body fat[.]" SSR 19-2p, 2019 WL 2374244, at *2 (May 20, 2019). "Health care practitioners diagnose obesity based on a person's medical history, physical examinations, and body mass index (BMI)." *Id.* Obesity is defined in the medical

---

*Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

community "as a BMI of 30.0 or higher." *Id.* When assessing a claimant's RFC, ALJs "must consider the limiting effects of obesity." *Id.* at *4. Obesity can lead to a variety of limitations including:

> A [claimant] may have limitations in any of the exertional functions, which are sitting, standing, walking, lifting, carrying, pushing, and pulling. A [claimant] may have limitations in the nonexertional functions of climbing, balancing, stooping, kneeling, crouching, and crawling. Obesity increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities. Obesity may also affect a [claimant's] ability to manipulate objects, if there is adipose (fatty) tissue in the hands and fingers, or the ability to tolerate extreme heat, humidity, or hazards.

*Id.* "[The Commissioner] asseses[es] the RFC to show the effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment." *Id.* A claimant with a medically determinable impairment of obesity "may have limitations in the ability to sustain a function over time. *In cases involving obesity, fatigue may affect the [claimant's] physical and mental ability to sustain work activity. This may be particularly true in cases involving obesity and sleep apnea.*" *Id.* (emphasis added). The Commissioner also considers that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately." *Id.*

Given these limitations, ALJs are "required to assess and explain the ways in which an obesity impairment hinders a claimant's 'maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Cassandra W. v. Kijakazi*, No. CBD-20-153, 2022 WL 279828, at *5 (Jan. 31, 2022) (quoting SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). "An ALJ is required to explain how she reached her conclusion 'on whether obesity caused any physical or mental limitations.'" *Id.* (quoting *Boston v. Barnhart*, 332 F.Supp.2d 879, 886 (D. Md. 2004)).

As Plaintiff posits, in remanding for further analysis, Judge Copperthite directed the ALJ "to explain how Plaintiff's obesity affects his ability to 'perform basic work activities' and how it affects his other impairments." *Uk Lian C. v. Kijakazi*, No. ADC-21-3065, 2022 WL 16577565, at *5 (D. Md. Nov. 1, 2022). The Court highlighted that the ALJ had failed to "explain how [Plaintiff's] other impairments, including diabetes mellitus, heart disease, heart failure, obstructive sleep apnea, and degenerative disc disease in his cervical and lumbar spine, correlate or comingle with [Plaintiff's] obesity." *Id.* Judge Copperthite also noted that the ALJ had "failed to discuss Plaintiff's reported daytime fatigue, which, under SSR 19-2p, could reasonably be attributed to his obesity[.]" *Id.* (citing SSR 19-2p, 2019 WL 2374244 ("In cases involving obesity, fatigue may affect the person's physical and mental ability to sustain work activity.")).

Here, the ALJ acknowledged Plaintiff's testimony alleging "disability primarily due to a combination of physical impairments. He alleges memory loss, and difficulty with concentration due to pain and fatigue." Tr. 1382. Plaintiff "described significant limitations that prevent him from completing chores and performing self-care. He alleged being unable to lift anything heavier

than a pound, and being able to walk 15 steps before needing to stop and rest. He reported spending the day sitting or lying in bed, and that he cannot sleep in a chair." Tr. 1382. Plaintiff also "alleged experiencing shortness of breath, daytime fatigue, chest pain, and edema, which further reduce his ability to function, in addition to difficulty grasping and holding onto objects." Tr. 1382. In assessing Plaintiff's RFC, the ALJ concluded that Plaintiff's "allegation of fatigue, irrespective of its source, has been accommodated with a limitation on exposure to workplace hazards." Tr. 1389.

The ALJ noted that they "considered the nexus of obesity and sleep apnea" through the discussion of Plaintiff's sleep apnea. Tr. 1387. In the ALJ's discussion of Plaintiff's sleep apnea, the ALJ noted that Plaintiff was "treated with a CPAP" and "reported that his sleep both did not interfere at all or 'somewhat interfered' with his daytime functioning, but he did not report 'much' or 'very much' interference." Tr. 1386. The ALJ "considered that some of the effects of sleep apnea could result in brief periods of inattentiveness, were one deprived of sleep." Tr. 1386. As such, the ALJ "restricted [Plaintiff's] exposure to climbing ladders, ropes and scaffolds, and to moving mechanical parts and unprotected heights as a precaution." Tr. 1386.

In considering Plaintiff's obesity, the ALJ noted that Plaintiff had a BMI of 38.09 and that Plaintiff's "obesity was a part of him for this entire period. Thus his symptoms and the objective findings at each visit were already factored into the problems [Plaintiff] subjectively perceived and the objective findings at each provider visit." Tr. 1386. The ALJ noted that Plaintiff's "complaints (symptoms) exist and they were factored into the residual functional capacity." Tr. 1386. The ALJ found that none of the medical notes "ascribe a specific limitation to his obesity" and "[t]o the extent the records specifically address obesity, it is to say that but for obesity [Plaintiff] is largely healthy." Tr. 1386. The ALJ noted that "there is no clarification of the physician's explanation of limitations that result in [Plaintiff's] healthy condition 'but for' obesity." Tr. 1386. As such, the ALJ limited Plaintiff to a "light exertional level rather than a medium exertional level[,]" accounting for obesity and the requirements of SSR 19-2p, and that "[i]t was factored into the [ALJ's] decision (in combination with the other impairments) to limit [Plaintiff] to occasional postural maneuvers." Tr. 1387.

The Court agrees with Plaintiff that the ALJ's lack of explanation warrants remand. A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). "'[A] proper RFC analysis' proceeds in the following order: '(1) evidence, (2) logical explanation, and (3) conclusion.'" *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 388 (4th Cir. 2021) (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)). SSR 96-8p details the steps an ALJ must take when assessing a claimant's RFC. *See generally* SSR 96-8p, 1996 WL 374184. Specifically, the ruling provides that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7.

Here, the ALJ did not provide a narrative discussion explaining how Plaintiff's allegations of fatigue are "accommodated with a limitation on exposure to workplace hazards." *See* Tr. 1389. Further, the ALJ also fails to explain how Plaintiff's sleep apnea, and associated inattentiveness, could be accommodated by restricting Plaintiff from "exposure to climbing ladders, ropes and

scaffolds, and to moving mechanical parts and unprotected heights."[4] *See* Tr. 1386. SSR 96-8p requires the ALJ to "describ[e] *how* the evidence supports *each*" of the ALJ's conclusions. SSR 96-8p, 1996 WL 374184, at *7 (emphasis added). By failing to specifically address how the evidence supports these limitations, the ALJ contravened SSR 96-8p. This lack of explanation frustrates meaningful review, especially in light of Judge Copperthite's order to "explain how Plaintiff's obesity affects his ability to 'perform basic work activities.'" *See UK Lian C.*, 2022 WL 16577565, at *5 (citing SSR 19-2p, 2019 WL 2374244, at *4 ("In cases involving obesity, fatigue may affect the person's physical and mental ability to sustain work activity.")) Because the ALJ's assessment lacks a narrative discussion bridging these limitations and the evidence, the Court's ability to review the ALJ's discussion of Plaintiff's obesity and fatigue is constrained. *See Thomas*, 916 F.3d at 311 ("[M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.").

Moreover, SSA regulations require the ALJ to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. While the ALJ found that Plaintiff's sleep apnea, and associated inattentiveness, could be accommodated, in part, by a restriction from moving mechanical parts and unprotected heights, *see* Tr. 1386, Plaintiff's RFC does not include these limitations, *see* Tr. 1381-82. The ALJ offers no explanation for this incongruity. Because the ALJ's evaluation of this evidence "was internally inconsistent," and there appears to be no reconciliation of these inconsistencies, the Court's ability to trace the ALJ's reasoning is impeded, making remand necessary. *Rodney G. v. Kijakazi*, No. BAH-22-3007, 2023 WL 6465436, at *4 (D. Md. Oct. 3, 2023) (citing *Mallett v. Berryhill*, No. 5:18-CV-241-D, 2019 WL 2932776, at *4 (E.D.N.C. June 17, 2019)).

Having determined that the ALJ erred in assessing the RFC, the Court must also determine whether the error warrants remand. Ordinarily, remand of an SSA decision for legal error is unwarranted unless a plaintiff shows that the error was harmful. *See Josiah T. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3572, 2022 WL 684944, at *2 (D. Md. Mar. 8, 2022) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). As Plaintiff argues, the vocational expert testified that if an employee's time off-task exceeded ten percent of the workday it would be work-preclusive. *See* Tr. 1420-21. Proper evaluation of the Plaintiff's inattentiveness might have led the ALJ to find that Plaintiff's time off-task exceeded the off-task time deemed work-preclusive by the vocational expert. Therefore, the Court finds the error was not harmless and remand is warranted.

Because the case is being remanded on other grounds, I need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider these arguments and make any required

---

[4] The ALJ also included an alternative finding "limiting [Plaintiff] to simple routine tasks account[ing] for the possibility that [Plaintiff's] inattentiveness was more than fleeting. It is an alternative finding, as the evidence does not support that it is a permanent condition." Tr. 1386. However, the ALJ fails to provide a narrative discussion explaining how this restriction accommodates Plaintiff's sleep apnea or related inattentiveness, likewise contravening SSR 96-8p.

*Uk C. v. Bisignano*
Civil No. 24-2286-DRM
July 29, 2025
Page 7

adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V.    **<u>CONCLUSION</u>**

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge